IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| GUILD FOR PROFESSIONAL PHARMACISTS, | Civil No.: 3:10-cv-00864-JE |
| Plaintiff, | |
| v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| KAISER FOUNDATION HOSPITALS, a foreign Non-Profit Corporation, and KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST, an Oregon Non-Profit Corporation, | |
| Defendants. | |

David J. Hollander
Jovanna L. Patrick
Hollander Lebenbaum & Gannicott
1500 S.W. First Avenue, Suite 700
Portland, OR 97201-5860

Dan F. LaRue
5323 SW Alfred
Portland, OR 97219

    Attorneys for Plaintiff

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 1

Victor Joseph Kisch
Jamie S. Kilberg
Stoel Rives LLP
900 S.W. Fifth Avenue , Suite 2600
Portland, OR 97204

    Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Guild for Professional Pharmacists ("the Guild") brings this action against Defendants Kaiser Foundation Hospitals and Kaiser Foundation Health Plan of the Northwest ("Kaiser") pursuant to Art. 301 of the National Labor Relations Act, 29 U.S.C. Art. 185. The Guild seeks a Declaratory Judgment that the written 2009-2012 Collective Bargaining Agreement ("CBA") does not accurately reflect the parties' agreement. The Guild also seeks reformation of the CBA to state what it alleges are the terms of the agreement.

This action was tried to the court on March 5, 6, and 7, 2012. After the trial, and with leave of the court, the parties submitted written closing and rebuttal arguments.

## **Findings of Fact**

The Guild is a labor union that represents approximately 3000 pharmacists and pharmacy interns in Oregon, SW Washington, California and New Jersey. Kaiser employs nearly 10,000 healthcare providers in the Pacific Northwest. Approximately 300 of the Guild's members are Kaiser employees working in Oregon and SW Washington. The Guild also represents Kaiser employees in Northern and Southern California.

The Guild and Kaiser have had an ongoing collective bargaining relationship for approximately 20 years, during which time they have negotiated numerous CBAs for Northern and Southern California, and the Northwest.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 2

In January of 2009, in anticipation of the expiration of the 2006-2009 CBA, the Guild sent a "reopener" letter to Kaiser asking that the parties begin negotiations for a new CBA. Before beginning negotiations, the Guild bargaining committee met to review the results of a member survey and discuss desired changes to the existing CBA.

Kaiser and the Guild held negotiation sessions on March 19, March 20, April 15, April 16, April 28, April 29, and April 30, 2009. The Guild's Executive Director, Ralph Vogel, was chief negotiator for the Guild. Vogel had been President of the Guild for 30 years and had extensive contract negotiation experience. Kevin Dull, Kaiser's manager of labor relations, served as chief negotiator for Kaiser. Dull also had extensive experience in contract negotiation.

The present dispute concerns Article 16 of the CBA, which sets out the method for calculating retirement benefits for Guild members. Under this Article, pharmacists' retirement benefits are based, in part, on a multiplier applied to the numbers of years of Credited Service a pharmacist has with Kaiser. Article 16.4 defines a year of Credited Service. Article 16.3 sets out the multiplier. Under the prior CBA, a full year of Credited Service was defined as a calendar year in which an employee had 2,000 or more hours.

On April 15, 2009, Kaiser provided the Guild its first written proposed changes for the new CBA. Kaiser did not include any proposed changes regarding Art. 16.4. At 2:30 p.m. on April 16, 2009, the fourth day of negotiations, the Guild proposed in writing that the definition of a year of Credited Service be changed from 2000 hours to 1800 hours. The written proposal did not indicate that the change would apply to "all years of service."

Kaiser's April 28, 2009 written response to the Guild's Credited Service proposal stated: "Current Contract Language." The Guild's next proposal, which it submitted to Kaiser at 11:30 the same day, again defined a year of Credited Service as "1800HR/YR." Kaiser did not specifically respond to the Guild's proposed changes to Art. 16 and the definition of a year of

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 3

Credited Service remained an "open" issue through the 6:30 p.m. negotiating session.

At 4:30 p.m. on April 29, 2009, Kaiser responded in writing to the Guild's retirement proposal with the following language: "1800 hours per year for credited service effective 1.01.12."

At 6:30 p.m. on April 29, 2009, the Guild proposed in writing that the 1800 hours for a full year of credited service be applied to "all years of service" and that the proposed change be effective January 2010. The Guild's 6:30 p.m. proposal indicated that Kaiser's position was "1800HR/YR effective 1/1/2012" and that credited service was an "open" issue. This is the first time during the negotiations that the Guild's desire to have 1800 hours apply to all years of service appeared in writing.

Kaiser's 8:00 p.m. responsive proposal again stated "1800 hours per year for credited service effective 1.01.12." There was no language referencing all years of service. The Guild's 9:30 p.m. proposal regarding credited service reflected a change in the effective date to January 1, 2012. This proposal again showed Kaiser's position as "1800HR/YR effective 1/1/2012" and continued to show credited service as an "open" issue.

At 10:00 a.m. on April 30, 2009, the final day of negotiations, Kaiser submitted another written proposal which again stated "1,800 hours per year for credited service effective 1.01.12."

During the negotiations that continued throughout the day on April 30th, the parties' chief negotiators held a series of side meetings. During these side meetings, Dull was joined by Kaiser negotiating team member Steve Logan; Vogel was joined by Guild Vice President Howard Hertz and sometimes by Tracy Barton, another Guild representative. Around 5:00 p.m. that evening the parties reached a tentative agreement ("TA"). Dull documented the TA by making handwritten changes and notations on Kaiser's 10:00 a.m. written proposal. The TA was reviewed line by line in a side meeting attended by Dull, Vogel and others, and certain additions

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 4

were made at Vogel's request. The negotiating teams then met together. After Dull read the entire TA to the teams, Dull and Vogel both signed. The language in the TA regarding Credited Service read: "1,800 hours per year for credited service effective 1.01.12."

Kaiser subsequently drafted language for Art.16.4 of the new CBA. Dull sent the draft language to Hertz and to an email account to which Hertz, Vogel, and Guild representative Claudia Myles had access. Vogel read and approved the draft language.

In early July 2009, Vogel reviewed and signed the CBA. Article 16.4 stated, in pertinent part:

> Credited Service: Each calendar year in which an Employee has 2,000 or more hours is a full year of Credited Service. . . .
>
> Each calendar year beginning on or after January 1, 2012 in which an Employee has 1800 or more hours is a full year of Credited Service. . . .

In July of 2009, the Guild asked Kaiser to modify the terms of Art. 16.4 to explicitly state that the 1800 hours for a year of Credited Service apply to all years of service. Kaiser ultimately notified the Guild in writing that it would not modify the language of Art.16.4 and that it interpreted the term to mean that after January 1, 2012, 1,800 hours would be applied on a going-forward basis.

The Guild filed the present action on July 23, 2010. In this action, the Guild asserts that the parties agreed to apply the 1800 hour definition of a full year of Credited Service retroactively to all years of an employee's service. The Guild seeks a judgment declaring that this was the agreement of the parties and reforming the CBA to reflect that agreement.

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 5

**Conclusions of Law**

The Guild's request for declaratory relief is based on its assertion that the parties had intended that the provision in Art. 16.4 of the CBA defining a year of Credited Service as 1800 hours apply retroactively to all of a Guild member's employment with Kaiser. The Guild asserts that the CBA should be reformed to clarify that intention.

Reformation is an equitable remedy that allows a court to correct a contract that does not accurately reflect the parties' agreement. Manning Lumber Co., v. Voget, 188 Or. 486, 500 (1950). In order to establish that it is entitled to relief, a party seeking reformation of a written contract must establish that:

> (1) that there was an antecedent agreement to which the contract can be reformed;
> (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and
> (3) that the party seeking reformation was not guilty of gross negligence.

Jensen v. Miller, 280 Or. 225, 228-29 (1977).

The parties here agree that any mistake made was unilateral on the part of the Guild. In order to establish that it is entitled to relief, the Guild must prove that there was an antecedent agreement, that Kaiser engaged in inequitable conduct and that the Guild was not grossly negligent. Because the terms of a written contract are presumed to be correct, each of the required elements for reformation of a written contract must be proven by clear and convincing evidence. Allen v. Gibbons Logging, Inc. v. Ball, 91 Or. App. 624, 629 (1988) (citations omitted).

Based upon my evaluation of the testimony and documents presented at trial, and a careful review of the parties' subsequent submissions, I conclude that the Guild has not shown by clear and convincing evidence that Defendant Kaiser agreed or intended that the CBA's 1800 hour definition of a full year of Credited Service apply to all years of service. Instead, the

evidence shows that during the parties' negotiations, Kaiser's written proposals consistently and unambiguously asserted that the 1800 hour definition would apply beginning January 1, 2012. The disputed testimony from Plaintiff's witnesses as to an oral agreement does not meet the clear and convincing standard.  The evidence is likewise not clear and convincing that Defendant Kaiser ever attempted to deceive the Guild about its intentions concerning the CBA provision in question, or acted in any other inequitable manner related to this provision during the parties' negotiations.

I need not and do not reach the question of whether the Guild was grossly negligent in concluding the agreement because of the failure of proof on the other two necessary elements. Defendants are entitled to judgment in their favor.

This document constitutes my written Findings of Fact and Conclusions of Law, filed pursuant to Fed. R. Civ. P. 52(a).

DATED this 4th day of June, 2012.

 /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 7